UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WESTWIDE WINERY, INC.,

                       Plaintiff,

- against -

SMT ACQUISITIONS, LLC and PALM BAY
INTERNATIONAL INC.,

                       Defendants.
------------------------------------------------------------------X

**ORDER ADOPTING REPORT AND RECOMMENDATION**

2:19-cv-4371 (DRH) (SIL)

**HURLEY, Senior District Judge:**

## INTRODUCTION

Presently before the Court is the November 5, 2020 Report and Recommendation of Magistrate Judge Steven I. Locke (the "R&R" [DE 46]) recommending that the Court deny Defendants SMT Acquisitions, LLC and Palm Bay International, Inc. (together "Defendants") motion to dismiss the First Claim for Relief ("First Claim") in the First Amended Complaint ("FAC" [DE 35, 36]) of Plaintiff Westside Winery, Inc. ("Plaintiff") or, in the alternative, to strike the allegations in support of the First Claim. [DE 41].

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a *de novo* determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b). Defendants object to the R&R, arguing (1) "Plaintiff cannot state a claim for relief under the *Winston* [*v. Mediafare Ent. Corp.*, 777 F.2d 78 (2d Cir. 1985)] factors," and (2) "the 'other purpose' exception to [Federal Rule of

Evidence] 408 does not apply" to a phone call in which the parties allegedly reached a settlement. Defs. Objs. at 3–4 [DE 48].

For the reasons stated below, Defendants' objections are overruled, the R&R is adopted, and Defendants' motion is denied.

## BACKGROUND

The Court adopts the R&R's detailed Background Section, to which no objections have been filed. (R&R at 2–6). The facts pertinent to this Order are repeated below.

In May 2019, Defendants allegedly breached a settlement agreement requiring them to take delivery of and pay for certain of Plaintiff's wine. (FAC ¶¶ 20–24). In July 2019, Plaintiff commenced this action in response. (*Id.* ¶ 25). In December 2019, counsel for both parties arranged a phone call for their clients to discuss settlement. (*Id.* ¶ 33). The clients allegedly reached an oral settlement agreement. (*Id.* ¶¶ 34–35).

This December 2019 oral settlement agreement required Defendants to pay for and accept the wine Plaintiff delivered. (*Id.* ¶¶ 36–38). Defendant ultimately rejected some of Plaintiff's wine, however, which allegedly breached the terms of both the May 2019 and December 2019 settlement agreements. (*Id.* ¶ 39). Plaintiff then amended its complaint to include *inter alia* a claim for the breach of the December 2019 oral settlement agreement. (R&R at 5; FAC ¶¶ 41–48). The operative FAC thus brings breach of contract claims arising from both the May 2019 settlement agreement and the December 2019 settlement agreement. (FAC ¶¶ 41–54).

## DISCUSSION

I. **Motion to Dismiss**

　　A. **Legal Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

### B. The R&R and Defendants' Objections

The R&R recommended denying Defendants' motion to dismiss Plaintiff's First Claim. "Based on [the *Winston*] factors," the R&R found, "Plaintiff's claim for breach of [the December 2019] settlement agreement is viable and sufficiently pled." R&R at 7–9. Courts employ the *Winston* factors to assess an oral contract's enforceability.[1] 777 F.2d at 80–81. They are: (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract

---

[1] The Court agrees with the R&R that the substance and applicability of New York law need not be addressed here because New York law and federal common law are "materially indistinguishable" as to the enforceability of settlement agreements. R&R at 8; *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007); *Monaghan v. SZS 33 Assocs.*, 73 F.3d 1276, 1283 n.3 (2d Cir. 1996) ("[T]he federal rule regarding oral stipulations does not differ significantly from the New York rule.").

that is usually committed to writing." *Id.* The R&R noted that neither party "made an express reservation not be bound in the absence of a writing" and that each party partially performed according to alleged terms in oral settlement contract. R&R at 7–9. Further, the R&R stated that determinations on "whether all terms had been agreed upon" and whether settlement agreements are "typically reduced to writing" are best addressed "after discovery." *Id.*

Defendants' objections target the R&R's *Winston* analysis. They argue that (i) Defendants expressly reserved the right not to be bound without a writing, (ii) the partial performance factor is neutral, (iii) open issues in negotiations remained, and (iv) settlement agreements are ordinarily memorialized in writing. Defs. Objs. at 8–11.

### C. Analysis

The balance of the *Winston* factor, taken each in turn below, supports denying Defendants' Rule 12(b)(6) motion.

#### 1. Express Reservation Not to be Bound Absent a Writing

The first *Winston* factor—an express reservation of the right not to be bound absent a writing—is the most important, as "the ultimate question is whether the parties intended to be bound." *Hallett v. Stuart Dean Co.*, 2020 WL 5015417, at *5 (S.D.N.Y. Aug. 25, 2020); *see Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72–73 (2d Cir. 1989). Defendants' express reservation allegedly came in an email stating the parties "will have to paper this and of course confirm the details with our clients." Ex. 4 to Decl. of Abigail T. Reardon ("Reardon Decl.") [DE 41-6].

Defendants' reliance on this document is misplaced at the pleadings stage. In considering a motion to dismiss pursuant to Rule 12(b)(6), a court is generally limited to the complaint and documents attached thereto. *See* Fed. R. Civ. P. 12(d); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). "A district court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss. Vacatur is required even where the court's ruling simply mak[es] a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion." *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) (internal quotation marks and citations omitted); *see, e.g.*, *No Hero Enters. B.V. v. Loretta Howard Gallery Inc.*, 20 F. Supp. 3d 421, 427–28 (S.D.N.Y. 2014) (refusing to consider an email between the parties that was attached as an exhibit to defendant's motion to dismiss papers). A plaintiff's "mere notice or possession [of the document] is not enough." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (emphasis in original) (quoting *Glob. Networks Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)).

The FAC does not attach or reference any emails, nor does the FAC "rel[y] heavily upon [their] terms." *See Nicosia*, 834 F.3d at 230 (internal quotation marks omitted); *see generally* FAC. Judge Tiscione did not consider the Reardon Declaration or its exhibits in reaching his recommendation. *See* R&R at 6–9. To the extent Defendants object to the R&R's failure to consider such material, that objection is

overruled. *See* Defs. Objs. at 8. The emails are not properly considered on a Rule 12(b)(6) motion to dismiss. Reading the FAC's allegations alone, and construing all reasonable inferences taken therefrom in Plaintiff's favor, nothing reflects an express reservation by Defendants of the right not to be bound absent writing. Therefore, this first factor favors Plaintiff.

Even if the emails are sufficiently integral to the FAC and thus properly considered, *see Faulkner v. Beer*, 463 F.3d 130, 133–35 (2d Cir. 2006), they do not "expressly" reserve the right not to be bound, *see* Ex. 4 to Reardon Decl. Read in a plaintiff-friendly light, the email merely reflects what it plainly states (an intention to memorialize the agreed-upon terms in writing) and not what Defendants say it implies (a reservation not to be bound until then).

The need to "paper" the deal does not necessarily reserve the right not to be bound absent a writing, and the Court will not expand that term's meaning to encompass such a reservation. *Paper* (*v.*), Oxford English Dictionary (3d ed. 2005) ("To write or set down on paper; to write about, describe in writing."). In the same vein, courts have declined to read in an "express" reservation where none is expressly made, despite a lingering need to "paper" the deal. *E.g., Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 WL 1377853, at *7 (S.D.N.Y. June 9, 2005) ("The first—and most important—*Winston* factor clearly favors Hostcentric," where Hostcentric asked whether defendant "still wanted to draft formal papers: 'Now that the parties have agreed on a settlement, please let me know if you still want to draft the necessary papers.'"); *Vari-O-Matic Mach. Corp. v. N.Y. Sewing Mach. Attachment*

*Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986) ("Failure to complete the formal stipulation papers does not mean that a settlement was not in fact reached. . . . [I]n this case since both parties made representations to the court that agreement had been reached, there can be no factual dispute that a settlement had been consummated . . . . The initial basis for the parties' representation to the court that settlement had been reached was the agreement reached in principle in June, 1984. The court orders that agreement enforced.").

In light of the above, the first *Winston* factor thus favors Plaintiff.

### 2. Partial Performance

"Partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts the performance signals, by that act, that it also understands a contract to be in effect." *Goldstein v. Solucorp Indus., Ltd.*, 2017 WL 1078739, at *8 (S.D.N.Y. Feb. 10, 2017) (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir. 1984)) (internal quotation marks and alterations omitted). According to the FAC, following the December 2019 settlement agreement, Defendants paid Plaintiff for and accepted certain wine upon Plaintiff's delivery – all per that agreement's terms. FAC ¶¶ 33–38. That is, both parties partially performed their ends of the December 2019 oral settlement agreement.

Defendants misplace reliance on *Aberra v. City of New York*, No. 18-1138, 2020 U.S. Dist. LEXIS 137839 (S.D.N.Y. July 31, 2020).² The *Aberra* defendants argued

---

² A Lexis citation is provided as the Court is unable to locate this case on Westlaw. The opinion may also be downloaded from its PACER docket.

both parties partially performed the terms of an oral settlement agreement, but upon considering its terms, the *Aberra* Court disagreed: "[N]either party performed *any* of the contemplated terms in the Oral Settlement Agreement." *Id.* at *36 (emphasis in original). That is, even assuming the terms in the oral settlement agreement were binding, there was no partial performance. *See id.* Making that assumption here, however, produces the opposite result: both Plaintiff and Defendants partially performed the contemplated terms. *See* FAC ¶¶ 33–38. This second factor favors Plaintiff.

### 3. Agreement on Contract Terms

The third factor looks at "whether there was 'literally nothing left to negotiate.'" *Winston*, 777 F.2d at 82 (quoting *R.G. Grp.*, 751 F.2d at 76). "[E]ven 'minor' or 'technical' changes arising from negotiations can weigh against" enforcing an oral agreement if those changes show the "parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect." *Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) (internal quotation marks omitted). But it is not a court's job "to determine retrospectively" when, if at all, the changes become "so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered." *In re Lehman Bros. Holdings Inc.*, 739 Fed. App'x 55, 57–58 (2d Cir. 2018) (quoting *Winston*, 777 F.2d at 83) (internal quotation marks omitted).

The FAC pleads the terms of the oral settlement agreement. FAC ¶¶ 34–35. Defendants' submissions fail to mention any unnegotiated terms, however minor,

that would evidence an intent not to be bound until formalized in writing. *See* Defs. Objs. at 10; *see also* Defs. Mem. [DE 41-1]; Defs. Reply [DE 43]. Even considering the Reardon Declaration exhibits, which the Court declines to do on this motion to dismiss, no light is shed on the existence of unnegotiated terms weighing against finding the oral contract binding. *See* Ex. 4 to Reardon Decl. Discovery may indeed reveal such terms, but any determination before then is premature. *See* R&R at 9. The third *Winston* factor thus supports Plaintiff.

### 4. Type of Contract Usually Committed to Writing

"Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation." *Winston*, 777 F.2d at 83. Yet "it would be a strange test if the fourth [*Winston*] factor always favored finding no agreement on the ground that settlement agreements usually are written." *Hostcentric Techs.*, 2005 WL 1377852, at *9. The clearest indication is the alleged agreement's complexity: the more complex, the more likely an agreement is typically committed to writing. *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997). The *Winston* Court, for example, "held that a settlement, whose terms were not announced in open court, for $62,500 paid over several years 'strongly suggest[ed]' that the parties would intend to be bound only by a writing." *Powell*, 497 F.2d at 130–31 (alteration in original) (quoting *Winston*, 777 F.2d at 83). Because this factor will not change the ultimate result, the Court assumes, without analysis, that the fourth factor favors Defendants.

### 5. Conclusion

Three of the four *Winston* factors, including the most import one, favor Plaintiff and thus support finding that the FAC plausibly alleges an enforceable oral settlement agreement. Defendants' objections to the R&R are overruled.

## II. Evidence Rule 408 Does Not Support Striking Plaintiff's First Claim

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "To prevail on a motion to strike, the movant must show (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Jalayer v. Stigliano*, 420 F. Supp. 3d 58, 64 (E.D.N.Y. 2018). A court "should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Comm. United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

### B. The R&R and Defendants' Objections

The R&R recommended denying Defendants' motion to strike the allegations in support of Plaintiff's First Claim. R&R at 9–12. Though Defendants argued that the facts supporting Plaintiff's First Claim trace to settlement negotiations, which Defendants argue is inadmissible per Federal Rule of Evidence 408, the R&R stated that some courts apply Rule 408 only to "the admissibility of evidence at trial" and not at the pleading or discovery stages. *Id.* at 9–11 (citing *Morse/Diesel, Inc. v. Fid.*

*& Deposit Co. of Md.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988)).  The R&R then analyzed the Rule 408's policy considerations, which it found to support Plaintiff's use because the negotiations were not used "to prove the validity or amount of the claims settled." *Id.* at 11–12.  The R&R also called striking the claims "premature" where discovery may reveal admissible evidence supporting the claim.  *Id.*  Accordingly, the R&R recommended denying Defendants' motion to strike.

Defendants object on two points.  First, according to Defendants, "[f]acts which come out of a settlement discussion cannot 'allow[] the court to draw the reasonable inference that the defendant is liable' for breaching an agreement made during that settlement discussion, or stand as facts which would entitle plaintiff to relief, because those facts are inadmissible and immaterial."  Defs. Objs. at 12–14.[3]  Second,

---

[3] To Defendants, "where one party seeks to enforce what it claims is a settlement of the case, and where the other party claims that there was no settlement or that a preliminary agreement is not enforceable," the first party ordinarily files a "motion to enforce the alleged settlement agreement."  Defs. Objs. at 11–12.  Defendants say they cannot find "a single case in which a party, claiming the case was settled, filed a new claim instead of moving to enforce, as happened here."  *Id.*

Even if true, Defendants fail to explain why a party cannot file a new claim and fail to cite authority prohibiting a party from doing so.  Moreover, the Court's research reflects ready examples of cases where what happened here happened there.  Consider *Adm'rs of the Tulane Ed. Fund v. Biomeasure, Inc.*, No. 2:08-cv-05096, 2011 WL 3268108 (E.D. La. July 28, 2011), where, "[i]n the original complaint, plaintiffs asserted their first through seventh causes of action against Biomeasure" alleging that Biomeasure "deprived them of their rights to [a pharmaceutical] drug in violation of multiple agreements."  *Id.* at *1–3.  "Plaintiffs moved for leave to amend their complaint on October 15, 2010, alleging that Biomeasure . . . entered into a binding settlement agreement with plaintiffs on February 11, 2010 but that [Biomeasure] refused to honor that agreement."  *Id.*  "The proposed amended complaint included the original seven causes of action against Biomeasure.  In addition, plaintiffs sought to assert three settlement-related claims against Biomeasure . . ." including "Breach of Settlement Agreement (ninth cause of action)."  *Id.*  "Biomeasure opposed plaintiffs' motion for leave to amend on the grounds that . . .

Page **12** of 18

Defendants say Rule 408's protection triggers where, as here, the settlement negotiations "ha[ve] no purpose other than to prove what was said in" those negotiations. *Id.* at 14. Defendants close with: "[A] party who engages in settlement discussion should not be face with a claim grounded only on what was said in those discussions." *Id.*

## C. Analysis

The Court overrules Defendants' objections. As a threshold matter, precedent instructs against applying the Federal Rules of Evidence at the pleadings stage, including on motions to strike. *Ricciuti v. N.Y.C Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6)."); *Lipsky*, 551 F.2d at 893 ("Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. . . . And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone."). Rule 408 has limited application here, if any at all: "the admissibility of documents incorporated in the complaint is irrelevant at the dismissal stage." *Cerni v. J.P. Morgan Sec., LLC*, 208 F. Supp. 3d

---

no enforceable settlement agreement exists between the parties." *Id.* Plaintiffs were granted leave "to amend the complaint to assert their three settlement-related claims against Biomeasure." *Id.* The docket reflects no motion to enforce filed prior to the motion to amend.

533, 540–41 (S.D.N.Y. 2016) (quoting *New Yuen Fat Garments Factory Ltd. v. Aug. Silk, Inc.*, 2009 WL 1515696, at \*5 (S.D.N.Y. June 1, 2009)).

Assuming, without deciding, Rule 408 applies at the pleadings stage, it only prohibits admitting settlement negotiations "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). The term "disputed claim" refers to the claim subject to the settlement negotiations offered for admission. "[I]t is well established that 'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim *that was the subject of the compromise, not some other claim.*'" *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384, at \*3 (S.D.N.Y. May 15, 2012) (quoting *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir. 1997)) (emphasis added).

Accordingly, Rule 408 expressly permits admitting settlement negotiations "offered for another purpose." Offering settlement negotiations "for another purpose" includes offering them in a claim different from the one subject to the negotiations. *See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d. Cir. 1989) ("Evidence of an offer to compromise, though otherwise barred by Rule 408, can fall outside the Rule if it is offered . . . for a purpose other than to prove or disprove the validity of *the claims that the offers were meant to settle*" (emphasis added)). As one well-respected treatise puts it:

> Perhaps the largest group of [Rule 408 'another purpose'] precedents involves the use of compromise evidence where the compromise agreement is the basis for the claim rather than circumstantial evidence of the validity of the claim being compromised. For example, if suit is brought for breach of a settlement contract, Rule 408 does *not* prevent the plaintiff from proving the agreement.

23 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5314 (2d. ed. 2020) (emphasis added) (footnotes omitted).

In case there was any doubt, the House Judiciary Committee notes to the 2006 amendment to Rule 408 cited favorably *Cates v. Morgan Portable Building Corp.*, 780 F.2d 683 (7th Cir. 1985). *See* Fed. R. Evid. 408 committee notes to 2006 amendment. The *Cates* Court held that Rule 408

> provides that statements made in settlement negotiations are not admissible to establish a party's liability, or damages, *in the dispute that was the subject of the negotiation.* Nothing [defendant] said or agreed to in the negotiations that culminated in the execution of the [settlement] stipulation in September 1973 could have been used to establish its liability for the breach of contract that occurred in September 1970 or to fix its damages for that breach. . . . Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement.

*Cates*, 780 F.2d at 691 (emphasis added). *Cates*'s holding accords with Rule 408's cardinal policy consideration favoring the compromise and settlement of disputes.

The policy behind Rule 408 is best understood to reflect the wisdom that settlement negotiations proceed from a desire to end a case, not from a concession that the case is lost—hence the prohibition against their admission in the case the negotiations were meant to settle. *See* 23 Wright & Miller, Federal Practice and Procedure § 5302 (quoting Wigmore, Code of Evidence, at 204 (3d ed. 1942)). Where "parties' prior negotiations resulted in an agreement which was subsequently repudiated by [a defendant] . . . permitting [that defendant] to exclude the settlement evidence on Rule 408 grounds would flout the policy of promoting compromises." *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 294 (2d Cir. 1999). Otherwise, Rule 408

would shield a party from liability for breaching an agreement entered during settlement negotiations, disincentivizing settlement altogether.

The Second Circuit in *Rein v. Socialist People's Libyan Arab Jamahiriya* follows this wisdom. 568 F.3d 345, 351–53 (2d Cir. 2009). There, the district court's "significant legal error" was "essentially us[ing] [plaintiff's] conditional proposal to accept a particular monetary settlement as the basis for making an award of that amount. Were courts permitted to use provisional settlement concessions in that fashion, the possibilities of negotiating settlement in the future would be seriously impaired." *Id.* In other words, the district court impermissibly used settlement negotiations to determine the amount of the claim that was the subject of the negotiations. *See id.*

Defendants' position, if true, would require formalizing every settlement agreement in writing or else be unenforceable. To hold oral settlement agreements categorically unenforceable by virtue of the Federal Evidence Rules is out of sync with precedent – the *Winston* factors would be stripped of their intended use in determining *when* oral settlement agreements *are* enforceable. *E.g.*, *Winston*, 777 F.2d at 80–83 (holding the four factors "may be shown by oral testimony" in a case determining the enforceability of an oral settlement agreement); *see John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 628 (S.D.N.Y. 2018) ("The Settlement Agreement formed the basis of Plaintiffs' breach of contract claim. It would have been impossible for Plaintiffs to provide context for their claim without referencing that agreement."); *see also Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st

Cir. 1987) (admitting settlement negotiations "to prove the terms of the [settlement] agreement itself" is "crucial to a judicious enforcement of the agreement" and not barred by Rule 408); *Cates*, 780 F.2d at 691; *In re Vidov*, 2014 WL 3766721, at *6 (B.A.P. 9th Cir. July 31, 2014) ("It is well established that [Rule 408] does not exclude evidence related to a settlement when it is offered for the purposes of interpreting or enforcing the settlement.").

In December 2019, the parties negotiated settlement of a breach of a contract entered in May 2019. Rule 408 prohibits using those negotiations to prove the validity or amount of that breach—*i.e.*, using the December 2019 negotiations to prove the breach of the May 2019 settlement agreement. Plaintiff's First Claim, however, concerns a breach of a contract entered in December 2019. While it is true that the December 2019 contract resulted from the December 2019 settlement negotiations, its breach was not the "disputed claim"—the subject meant to be settled—in December 2019. As the R&R stated, Plaintiff "seeks to rely on the settlement negotiations leading to the December 2019 Settlement Agreement not to prove the validity or amount of the claims settled, but to prove the existence of the December 2019 Settlement Agreement." R&R at 11. Rule 408 therefore does not exclude this evidence.

## CONCLUSION

For the reasons discussed above, Defendants' objections are overruled. The Court ADOPTS the reasoning in the R&R; Defendants' motion to dismiss and motion to strike are DENIED.

**SO ORDERED.**

Dated: Central Islip, New York        s/ Denis R. Hurley
      January 4, 2021                  Denis R. Hurley
                                          United States District Judge