UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**For Online Publication Only**

-----------------------------------------------------------------X

WESTSIDE WINERY, INC.,

                            Plaintiff,

 - against -

SMT ACQUISITIONS, LLC and PALM BAY
INTERNATIONAL INC.,

                          Defendants.

-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

2:19-cv-4371 (JMA) (SIL)

FILED
CLERK

3:28 pm, Sep 19, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES**

**FARRELL FRITZ, P.C.**
Attorneys for Plaintiff
400 RXR Plaza
Uniondale, New York 11556
By:    Kevin P. Mulry, Esq.
         Kathryn C. Cole, Esq.
         Paige Bartholomew, Esq.

**DLA PIPER LLP US**
Attorneys for Defendants
1251 Avenue of the Americas
New York, New York 10020
By:    Abigail T. Reardon
         Jessica Park Wright

**AZRACK, District Judge:**

## INTRODUCTION

Presently before the Court is the Defendants SMT Acquisitions, LLC ("SMT")

and Palm Bay International, Inc.'s ("Palm Bay," and with SMT, "Defendants") motion

for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on

Plaintiff Westside Winery, Inc.'s ("Westside") First Claim for Relief for breach of

contract arising from a purported oral settlement agreement entered in December 2019.

For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 Statements.  (Def. 56.1 [DE 67]; Pl. 56.1 Resp. [DE 70]; Def. 56.1 Reply [DE 72]).

In 2017, Westside, a California winery, was party to a distributorship agreement with SMT, a New York wine distributor.  A disagreement arose concerning the contractual amount of Westside's wine SMT had to purchase, and the two litigated their dispute in the United States District Court for the Southern District of New York (the "SDNY").  They agreed to settle that case in May 2019, memorializing the terms in writing in a "May 2019 Settlement Agreement."  (*See* May 2019 Agmt., Ex. 1 [DE 68-1] to Declaration of Jessica Park Wright ("Park Wright Decl.") [DE 68]).  Palm Bay, a Florida wine distributor, guaranteed SMT's performance.

The May 2019 Settlement Agreement required payment and delivery to occur on two dates.  By June 2019, Westside would deliver its "2017 Varietals,"[1] among other wines, and SMT would pay approximately $2,350,000.  By January 2020, Westside would deliver its 2018 Reserve Cabernet Sauvignon, and SMT would pay $250,000.  Westside warranted that its wine would "be of sound and merchantable

---

[1]  The "2017 Varietals" include bottles of the 2017 Noble Tree Cabernet Sauvignon, the 2017 Noble Tree Cabernet Sauvignon Reserve, 2017 Noble Tree Merlot, and 2017 Noble Tree Merlot Reserve.  Am. Compl. ¶ 25 [DE 36].

quality, fit for human consumption and free of any defect." The parties further agreed that their obligations could "not be modified orally."

In June 2019, SMT paid roughly $1,980,000 and Westside delivered the 2017 Varietals. SMT, however, rejected the wine, contending it was "smoke tainted." In response, Westside commenced this action in the Eastern District of New York (the "EDNY") on July 30, 2019, alleging Defendants breached the May 2019 Settlement Agreement. Attempting to effectuate a settlement, the parties' counsels arranged a phone call on December 19, 2019 between Westside's owner Tom Baker and SMT's owner Marc Taub.

According to the testimony of Baker, Taub agreed, on the call, to pay $400,000 in two installments. (Tr. of Dep. of Tom Baker ("Baker Dep.") at 65:10–67:25, Ex. 4 [DE 68-4] to Park Wright Decl.). According to Baker, they agreed that the $400,000 payment was for the 2017 Varietals and to settle the litigation. (*Id.* at 65.) Baker testified that he told Taub that this amount was a "saw-off on the damages that [Westside] had suffered because of [SMT's] refusal to take delivery of and pay for" the 2017 Varietals in June 2019. (*Id.* at 65–67). Baker testified that, during this call, the parties further agreed that SMT would also fulfill its obligation under the May 2019 Settlement Agreement to take delivery of, and pay $250,000 for, the 2018

Reserve Cabernet in January 2020.[2]  (*Id.* at 67).

According to the testimony of Taub, SMT's owner, the parties agreed that SMT would pay $250,000 on December 19 and, then, on January 24, 2020, SMT would pay Westside $150,000—which, together, would cover "everything that was outstanding," *i.e.*, "for whatever wine that was left to be purchased – that was left to be bought and mak[e] sure that we didn't continue th[e] [EDNY] litigation process."  (Tr. of Dep. of Marc Taub at 49:12–51:18, 55:6–10, 81:9–82:10, Ex. 3 [DE 68-3] to Park Wright Decl.).  The testimonies of Baker and Taub on the terms of their oral agreement are irreconcilable.

Immediately after their December 2019 phone call, Westside's Baker emailed SMT's Taub:

> I think it is wonderful that you and I were able to resolve everything today . . . .
>
> Please ensure that the transfer of $250,000 today to our account is effected.
>
> . . .
>
> On January 24, 2020, please ensure that the balance agreed upon of $400,000[] [i]s transferred to the [Westside] Account.

---

[2] Baker's deposition testimony states, in relevant, part:

> we agreed that we would settle that litigation and forego our claims back and forth once and for all except for the payment and delivery to your client of the 2017 allegedly smoke-tainted wine -- which Mr. Taub agreed was not, in fact, smoke-tainted at all -- um, that he would send the wine back and we would put stickers on it **and he would take and pay for the Reserve -- 2018 Reserve Cabernet as per the Settlement Agreement and** pay Westside Winery the sum of $400,000 in two installments to pay for outstanding wine and for what I said was a saw-off on the damages that we had suffered because of their refusal to take delivery of and pay for the wine.

(Baker Dep. 65–66 (emphasis added).)

(Emails dated Dec. 19, 2019, Ex. 6 [DE 68-6] to Park Wright Decl.).  Thus, Westside's email indicated that it would be paid an additional $400,000 on January 24, 2020, notwithstanding any amounts paid earlier in December 2019.[3]

Taub responded an hour later stating: "On January 24, we will take delivery of the 2018 [Reserve] Cabernet Sauvignon . . . and wire transfer[] you the remaining balance of $150,000, for a total of $400,000." (*Id.*).  SMT's email indicted that it was to pay $400,000 combined between December 2019 and January 24, 2020.

At some point on December 19 after the phone call between the principals, SMT sent Westside a check for $250,000.  (Baker Dep. at 72; Emails dated Dec. 19, 2019).

On January 24, 2020, Westside again asked SMT to transfer $400,000 into Westside's account before Westside delivered the 2018 Reserve Cabernet Sauvignon per both the May 2019 Settlement Agreement and December 2019 oral agreement. (Emails dated Jan. 24–25, 2020, Ex. 7 [DE 68-7] to Park Wright Decl.).  In proof thereof, SMT sent copies of two checks: one dated December 2019 in the amount of $250,000 and one dated January 2020 in the amount of $150,000.  (*Id.*).  The disconnect came into focus with Westside's email later that day:

---

[3]  The version of the December 2019 Settlement Agreement set out in Baker's testimony and email required SMT to ultimately pay a total of $2,633,977, which is $33,977 more than SMT was required to pay under the May 2019 Settlement Agreement.  (Def.'s Mem. of Law at 4–5.)  As noted above, Baker testified that, during the December 19 phone call, he told Taub that they were settling, at a discount, Westside's claim for damages as a result of SMT's purported breach of the May 2019 Settlement Agreement.  SMT claims that it has viable setoffs and counterclaims that would reduce the total amount owed under the May 2019 Settlement Agreement.

> I note that you emailed to me a copy of the $250,000 cheque provided in December [2019]. It does not constitute payment of the $250,000 for the wine that was required to be picked up and paid for today by [SMT] pursuant to the [May 2019] Settlement Agreement. The copy that you provided today represented partial payment of [] the $400,000 that [SMT] agreed with me to pay to settle the litigation.
>
> Please deposit $250,000 in [Westside's] account immediately.

(*Id.*). SMT explained its position three days later, after delivery had fallen through:

> I thought [SMT] had a balance of [$400,000] to pay. [SMT] agreed to pay [$250,000] immediate[ly] and the balance when [SMT] picked up the rest.
>
> I thought that was what has been agreed. I thought we were only talking about the goods that had been yet to have been paid for. I agreed to take everything.
>
> Not pay an additional settlement fee.

(Emails dated Jan. 27, 2020, Ex. 8 [DE 68-8] to Park Wright Decl.). The disputed $250,000 was never paid and the 2018 Reserve Cabernet Sauvignon was never delivered.

Westside filed an Amended Complaint on June 23, 2020 and added a new claim for breach of the oral settlement agreement entered in December 2019 – titled the "First Claim for Relief." [DE 36]. The First Claim for Relief is specifically premised upon SMT's promise "to take delivery of, and pay for, the 2018 Reserve Cabernet [Sauvignon] pursuant to . . . the May 2019 Settlement Agreement," (Am. Compl. ¶ 44). Defendants moved to dismiss this new claim on October 9, 2020 and the Court denied their motion on January 4, 2021. [DEs 41-1, 55].[4] Discovery closed on May

---

[4] The Honorable Denis R. Hurley's decision is published at 511 F. Supp. 3d 256 (E.D.N.Y. 2021). The case was reassigned to the undersigned on July 8, 2022.

27, 2021.  [DE 61].  Defendants made the instant motion for summary judgment on the First Claim for Relief on October 15, 2021.  [DE 65].

## LEGAL STANDARD

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193,

205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## DISCUSSION

The Court begins with whether the parties had a meeting of the minds in December 2019, which determines whether the December 2019 oral agreement is an enforceable contract.   Next, the Court decides whether the May 2019 Settlement Agreement's "Entire Agreement" provision precludes enforcement of the December 2019 oral agreement.   Lastly, the Court turns to whether Federal Rule of Evidence 408 bars evidence relating to Westside's First Claim for Relief.

## I.    Meeting of the Minds

Parties must reach a "meeting of the minds" on a contract's material terms for the contract to be valid under New York law.   *Stonehill Capital Mgt. LLC v. Bank of the W.*, 28 N.Y.3d 439, 448 (N.Y. 2016).[5]

To determine whether parties to an oral agreement manifested "mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms, . . . the court looks not to the parties' after-the-fact professed subjective intent, but rather at their objective intent as manifested by their expressed words and conduct at the time of the agreement." *Kelly v. Bensen*, 151 A.D.3d 1312, 1313 (N.Y. App. Div., 3d Dep't 2017) (quoting *Express Indus. & Term. Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999) and *Winkler v. Kingston Hous. Auth.*, 259 A.D.2d 819, 823 (N.Y. App. Div., 3d Dep't 1999)).   "Disproportionate

---

[5]   Because the Court sits in diversity, the choice of law principles of New York, the forum state, determine the law applied to the substantive claims.   *AEI Life LLC v. Lincoln Benefit Co.*, 892 F.3d 126, 132 (2d Cir. 2018).   Because the parties have briefed the merits of this claim under New York law and have not argued that any other law should apply, the Court will apply New York law. *Texaco A/S (Denmark) v. Com. Ins. Co. of Newark, NJ*, 160 F.3d 124, 128 (2d Cir. 1998).

emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Brown Bros. Elec. Contractors v. Beam Const. Corp.*, 41 N.Y.2d 397, 399–400 (N.Y. 1977). "Generally, the aim is a practical interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable expectations.'" *Id.* at 400 (quoting 1 Corbin on Contracts, § 1).

"Whether there was a meeting of the minds is a question of fact." *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 534 (2d Cir. 1975); *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 171 A.D.2d 479, 483 (N.Y. App. Div., 1st Dep't 1991) (finding a "factual dispute as to whether an oral agreement was created between plaintiff and defendant" where "[t]he accounts related by Bauman and Heaney concerning their conversation and the ensuing contacts between Bauman and defendant's employees var[ied] widely"). "[W]here questions of fact and credibility exist with respect to the existence of a binding oral agreement, and the terms thereof, summary judgment in favor of either side is inappropriate." *Kramer v. Greene*, 142 A.D.3d 438, 440 (N.Y. App. Div., 1st Dep't 2016); *Berlinger v. Lisi*, 288 A.D.2d 523, 524 (N.Y. App. Div., 3d Dep't 2001) (affirming denial of partial summary judgment due to "questions of fact as to the existence of an express oral agreement between the parties").

Westside persuasively argues that whether the parties, in December 2019, had a meeting of the minds sufficient to create a valid contract reflects a genuine dispute

of material fact. Westside's Baker testified that he and SMT's Taub reached an agreement and provided the details thereof. (Baker Dep. at 56:19–57:2, 63:10–70:6.) Baker's testimony suffices to carry Westside's burden in resisting summary judgment. *See Celotex Corp.*, 477 U.S. at 324. The Court may not assess Baker's credibility or chose between his and Taub's conflicting versions of events because those are "are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)).

Defendants juxtapose Baker and Taub's emails sent after their oral discussion in an effort to prove that their minds did not meet. That the parties subsequently disputed the oral agreement's terms does not mean there cannot be a question of fact as to whether they had a meeting of the minds at the time of contracting. *See, e.g.*, *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, 2017 WL 3432073 (E.D.N.Y. Aug. 8, 2017) (denying summary judgment where the parties disputed the terms of an oral contract, despite emails sent later that same day reflecting their two different understandings, because the evidence demonstrated "[n]either interpretation [was] unreasonable," "it is not the Court's role . . . to weigh the extrinsic evidence to determine which interpretation better captures the parties' intent," and "whether the parties formed a contract with such substantial ambiguity that may have precluded a meeting of the minds is a question of fact for the jury"). Here, according to Baker's testimony, the alleged contract at issue was agreed to during the December 19, 2019 phone call, prior to the conflicting emails that were subsequently exchanged.

In support of their arguments, Defendants rely on *6115 Niagara Falls Blvd., LLC v. Calamar Constr. Mgmt. Inc.*, 193 A.D.3d 1436 (N.Y. App. Div., 4th Dep't 2021). In *6115 Niagara*, the parties "ostensibly reached an agreement" to settle a breach of contract action but, ultimately, disputed the terms of said agreement after the plaintiff contended it was owed $150,000 plus $97,000 and defendant contended it owed $150,000 total. The appellate court reversed the trial court's grant of the plaintiff's motion to enforce because "the record demonstrate[d]" that there was "a reasonable basis for the parties' difference of opinion as to what the agreement included or did not include." *Id.* Rescinding the agreement as "unenforceable for lack of a meeting of the minds regarding a material element thereof," the court in *6115 Niagra Falls* denied the plaintiff's motion to enforce. *Id.* (quoting *Computer Assoc. Int'l, Inc. v. U.S. Balloon Mfg. Co.*, 10 A.D.3d 699, 700 (N.Y. App. Div., 2d Dep't 2004)).

Defendants' reliance on *6115 Niagara Falls* is misplaced as it is distinguishable from the instant suit.

First, a motion to enforce is procedurally distinct from a motion for summary judgment. Under New York law, a court can sit as the factfinder on a motion to enforce: "[w]here there is direct conflict between the parties not only as to whether any settlement was ever reached, but also, if reached, the terms thereof, that conflict should be resolved upon common law evidence before a court or referee, pursuant to CPLR 2218." *Kirkeby-Natus Corp. v. Gevinson*, 33 A.D.2d 883, 883 (N.Y. App. Div., 4th Dep't 1969); *see also Mut. Life Ins. Co. v. O'Donnell*, 146 N.Y. 275, 280 (N.Y. 1895) ("We do not question the power of the special term to so determine the facts, but we

wish to suggest that, where so much is involved, and the conflict is so sharp, it would be more satisfactory to have the question determined upon common-law evidence, taken by the court or before a referee appointed for that purpose . . . ."); New York C.P.L.R. 2218 expressly grants New York state courts that power: "The court may order that an issue of fact raised on a motion shall be separately tried by the court or a referee."  By contrast, "the Court is not the fact-finder at [the summary judgment] stage of the proceedings," so the Court may not resolve issues of fact at this juncture.[6] *Simone v. United States*, 2012 WL 4891617, at *15 (E.D.N.Y. Oct. 9, 2012).

Second, *6115 Niagara Falls* involved two written agreements that both contained ambiguous terms.  Those ambiguous terms and the other evidence in the case led the Appellate Division to ultimately conclude that there was no meeting of the minds and, thus, no contract.  Here, SMT has not established that the oral agreement between Baker and Taub—as recounted in Baker's testimony—included such ambiguous terms.

Defendants' motion for partial summary judgment on Westside's First Claim for Relief for failure to establish a "meeting of the minds" is denied.

---

[6] Motions to enforce settlement agreements may also be filed in federal court.  *See Monaghan v. SZS 33 Assocs., L.P.*, 875 F. Supp. 1037 (S.D.N.Y. 1995) (federal court, sitting as factfinder on motion to enforce, declines to hold a hearing on a factual dispute because it was "in a position to make a finding based on the affidavits and the events"), *aff'd*, 73 F.3d 1276 (2d Cir. 1996).  Here, the only motion before the Court is one for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.     Entire Agreement Provision

Defendants read the May 2019 Settlement Agreement's Entire Agreement provision as precluding enforcement of their alleged December 2019 oral agreement. Def. Opening at 7–8 [DE 66].  The Entire Agreement provision reads:

> This Agreement is the entire arrangement, understanding and agreement between [Westside] and SMT and supersedes all prior negotiations, drafts and other understandings concerning the settlement, termination and release herein provided for in respect of the Assignment, the Distribution Agreement and the [SDNY] Litigation. This Agreement may not be modified orally.

Section 10, May 2019 Agmt.  Defendants contend Westside contradicts itself by saying the December 2019 oral agreement did not modify the May 2019 Settlement Agreement's terms while also saying certain of the latter's terms were retained by the former.  Def. Opening at 7–8.

In general, "a written agreement that expressly states it can be modified only in writing cannot be modified orally."  *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990) (applying New York law).  If, however, an oral agreement "neither changes nor modifies the written contract" but, rather, "relates to issues not addressed in the [written] contract," the prohibition against oral modifications does not trigger and the oral agreement is valid.  *Heydt Contracting Corp. v. Tishman Const. Corp. of New York*, 163 A.D.2d 196, 197 (N.Y. App. Div., 1st Dep't 1990); *see also Gerard v. Cahill*, 66 A.D.3d 957, 959–60 (N.Y. App. Div., 2d Dep't 2009) (enforcement of oral agreement not barred by no oral modifications provision because "the alleged oral agreement was a separate, additional agreement addressing a scenario that was not anticipated and not covered by the terms of the operating

agreement"); *Treeline 990 Stewart Partners, LLC v. RAIT Atria, LLC*, 107 A.D.3d 788, 790 (N.Y. App. Div., 2d Dep't 2013) (finding that subsequent oral agreement for one party to buy out the other's interest did not run afoul of the no oral modifications provision because "the alleged oral agreement was a separate additional agreement addressing a situation not covered by the terms of the operating agreement").

The terms of the December 2019 oral agreement do not violate the Entire Agreement provision.  SMT has not shown how the oral December 2019 Settlement Agreement—as set out in Baker's testimony—constitutes a modification of the May 2019 Settlement Agreement.  SMT does not identify what provision was modified nor does it explain how it was modified.

According to Baker, the December 2019 Settlement Agreement settled, at a discount, Westside's claim for damages that it suffered as a result of SMT's purported breach of the May 2019 Settlement Agreement.  That aspect of the December 2019 Settlement Agreement—which concerned a purported breach of the May 2019 Settlement Agreement—did not modify the obligations of either party under the May 2019 Settlement Agreement.  In addition, according to Baker's account, the December 2019 oral agreement required SMT to pay the amounts it was owed, under the May 2019 Settlement Agreement for both the 2017 Varietals and the 2018 Reserve Cabernet Sauvignon.  *See, e.g.*, Baker Tr. at 67:14–68:23 ("[W]e agreed that they would fulfill their obligation under the [May 2019] Settlement Agreement to take delivery of and pay for the 2018 Reserve Cabernet.").  This aspect of the December 2019 Settlement Agreement did not modify the parties' obligations under the May

2019 Settlement Agreement, including the requirement in the May 2019 Settlement Agreement that SMT pay $250,000 for the 2018 Reserve Cabernet Sauvignon in January 2020.

SMT has not established that the oral modification provision in the May 2019 Settlement Agreement precludes Westside's claim here.[7] *Cf. Standard Steel, LLC v. Buckeye Energy, Inc.*, No. 04-CV-538, 2005 WL 2403636, at *12 (W.D. Pa. Sept. 29, 2005) (finding, under Pennsylvania law, that no-oral modification clause in one of three underlying agreements at issue in litigation did not preclude oral settlement agreement that parties reached after the filing of the litigation).

Accordingly, SMT's motion—which seeks summary judgment based on the no oral modification provision—is denied.

## III.    Federal Rule of Evidence 408

Federal Rule of Evidence 408 prohibits admitting settlement negotiations "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). Defendants argue the content of Baker and Taub's conversation in December 2019 "is not admissible" because it reflects "a settlement discussion intended to settle this case." Def. Opening at 8–9. In Defendants' view, the call "was an effort to resolve the parties' relationship completely" and "there was no 'other claim' beyond a claim under the May 2019 Settlement Agreement." *Id.* Accordingly, Defendants' say,

---

[7] The no oral modification provision might also not apply on the basis that SMT partially performed on the December 2019 Agreement. In December 2019 and January 2020, SMT sent Westside checks for $250,000 and $150,000, respectively—payments that were required under the December 2019 Settlement Agreement. However, as no party has raised the issue of partial performance, the Court does not rely on it here.

"Federal Rule of Evidence 408 bars the first claim" in Westside's Amended Complaint, *i.e.*, Westside's breach of the December 2019 oral agreement claim. *Id.* (capitalization omitted).[8]

Rule 408 prohibits the admission, on behalf of any party, "conduct or a statement made during compromise negotiations about the claim," if offered "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. The term "disputed claim" refers to the claim sought to be settled by the negotiations offered for admission. *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384, at *3 (S.D.N.Y. May 15, 2012) (quoting *Uforma/Shelby Bus. Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293–94 (6th Cir. 1997)) (emphasis added). The December 2019 phone call was an attempt to settle Westside's breach of the May 2019 Settlement Agreement claim. It did not concern Westside's breach of the December 2019 oral agreement claim, as that claim could not have possibly been asserted at the time of the December 2019 phone call. The "disputed claim" at issue in the December 2019 phone call was not the breach of the December 2019 oral agreement – meaning that the phone call is admissible with respect to that breach.

Contrary to Defendants' view, admitting the December 2019 negotiations to prove the December 2019 oral agreement does not violate the policy behind Evidence Rule 408. The situation here is analogous to that before the Second Circuit in *Starter*

---

[8] Defendants lodge no argument concerning the admission of the December 2019 negotiations with respect to Westside's claim that SMT breached the May 2019 Settlement Agreement. Accordingly, the Court declines to address the issue.

*Corp. v. Converse, Inc.*, 170 F.3d 286 (2d Cir. 1999): The parties' settlement negotiations "resulted in an agreement [here, in December 2019] which was subsequently repudiated by [Defendants], giving rise to the instant case. Thus, if anything, permitting [Defendants] to exclude the settlement evidence on Rule 408 grounds would flout the policy of promoting compromises under the Rule." *Id.* at 294; *see Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir. 1987); *Cates v. Morgan Portable Building Corp.*, 780 F.2d 683, 691 (7th Cir. 1985); *In re Vidov*, 2014 WL 3766721, at *6 (B.A.P. 9th Cir. July 31, 2014) ("It is well established that [Rule 408] does not exclude evidence related to a settlement when it is offered for the purposes of interpreting or enforcing the settlement.").

To the extent Defendants argue that, because the December 2019 negotiations attempted to "settle this case" in its entirety, it is therefore forever inadmissible in this "case," regardless of the circumstances, they are mistaken. Evidence Rule 408 speaks in terms of "claims" not "cases." It bars admission of the settlement negotiations only if they are offered "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408.

Accordingly, Evidence Rule 408 does not bar Westside's First Claim for Relief, and Defendants' motion on this issue is denied.

## CONCLUSION

For the reasons discussed above, Defendants' motion for partial summary judgment on Plaintiff's First Claim is denied. There are genuine disputes of fact as to whether the parties had a meeting of the minds on the material terms of the

December 2019 oral agreement. Moreover, the May 2019 Settlement Agreement's "Entire Agreement" provision does not render the December 2019 oral agreement unenforceable because the latter is not an oral modification of the former. Lastly, Federal Rule of Evidence 408 does not bar Westside's First Claim for Relief because the December 2019 settlement negotiations did not seek to settle that claim.

**SO ORDERED.**

Dated: Central Islip, New York                         **/s/ (JMA)**
      September 19, 2022                         Joan M. Azrack
                                             United States District Judge